## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KAREN MARCELLINO | CASE NO: 1:19-cv-459 |
| Plaintiff, | |
| v. | JUDGE |
| GEAUGA COUNTY HUMANE SOCIETY, INC., ET AL. | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTION

### I.    NATURE OF THE RELIEF SOUGHT

Plaintiff Karen Marcellino sets forth the relief she requests in her Motion for Temporary Restraining Order, and Preliminary and Permanent Injunction.

### II.    PRELIMINARY STATEMENT

Karen Marcellino is an innocent owner of two horses.  She had no knowledge of the crimes alleged against Bianca Marcellino, is not culpable for any alleged illegal conduct, and has received zero notice and opportunity to be heard on the seizure, retention, and looming March 5, 2019 forfeiture of her property.  Geauga County Humane Society, Christian Courtwright, and Does 1-200 ("Defendants") seized and retained property that they knew was not owned by Bianca Marcellino.  Defendants knew Karen Marcellino was the owner of the horses it seized and retained unlawfully.  Defendants seized and retained property that they knew belonged to someone that had no knowledge of the alleged crime, and that they knew did not participate in the alleged crime.  Defendants had no authority under Ohio Revised Code § 959.13, and under

the United States Constitution, to seize[1] and retain Karen Marcellino's horses.  Defendants' acts

in seizing and retaining her horses, violates her right against unreasonable seizure under the

Fourth Amendment to the United States Constitution, and also violates the mandated due process

under the Fourteenth Amendment of the United States Constitution.  Additionally, R.C. 959.13 is

unconstitutional both on its face and as applied, and R.C. 959.99 is unconstitutional as applied.

On March 5, 2019 Defendants will seek forfeiture of Karen Marcellino's horses.[2]  Defendants

also have no legal authority to permanently obtain possession of Karen Marcellino's horses

through forfeiture in Bianca Marcellino's criminal case.

## III.    FACTUAL BACKGROUND

Defendant Karen Marcellino is the owner of two horses, which have been in the

possession of Defendant Geauga County Humane Society since June 1, 2018.  On Tuesday,

March 5, 2019, Defendants will seek, through Bianca Marcellino's criminal case, forfeiture of

Karen Marcellino's property.  In February of 2018 Karen Marcellino purchased two horses from

a kill-pen in Texas.  She paid for them to be transported to Ohio, and received the two horses on

or about February 22, 2018.  The horses' names are Dreamer and Ferrari.  On the day they

arrived in Ohio, she began boarding the horses at Bianca Marcellino property at 7224 Wilson

Mills Road, Chesterland, Geauga County, Ohio.  On June 1, 2018, Defendant Christian

Courtwright, a humane officer for Defendant Geauga County Humane Society, seized Karen

Marcellino horses from Bianca Marcellino's property.  Defendants knew that Bianca Marcellino

was not the owner of the horses it seized, and knew that Karen Marcellino was the owner of the

---

[1] If the seizure of Karen Marcellino's horses was done pursuant to a search warrant, Karen
Marcellino has no standing to challenge the warrant.  She takes no position on whether the
seizure pursuant to the warrant was lawful or not.
[2] Exhibit A, page 8, available at https://www.facebook.com/HollandMuirden.

horses.  Defendants knew that Karen Marcellino had no involvement in the allegations of animal cruelty, had no knowledge of these allegations, and is an innocent owner of the horses. Defendants have never given Karen Marcellino any notice or opportunity to be heard on the seizure, retention, and forfeiture of her property.

Two months after the horses were seized, on August 1, 2018, Defendants Geauga County Humane Society and Courtwright, filed two criminal complaints against Bianca Marcellino in the Chardon Municipal Court, Geauga County, Ohio, alleging that she violated R.C. 959.13(A)(1).  On February 21, 2019 Bianca Marcellino was convicted of both counts of violating R.C. 959.13(A)(1), and she will be sentenced on Tuesday, March 5, 2019.  The applicable penalty provisions under R.C. 959.99(D) gives authority to the state court to order forfeiture of Karen Marcellino's property[3]  On February 22, 2019, Jeffrey Holland, the prosecutor representing Geauga County Humane Society in Bianca Marcellino's R.C. 959.13 criminal case, publicly announced on his law firm's Facebook page, that on Tuesday, March 5, 2019, the State court may order Bianca Marcellino to forfeit her mother's horses.[4]  Jeffrey Holland also announced on his law firm's Facebook page that Geauga County Humane Society will be seeking forfeiture of the horses.[5]  There are no allegations in Bianca Marcellino's criminal case, or any other proceeding, that Karen Marcellino, neither had knowledge of, or participated in, the allegations of abuse, nor was she charged with any crime.  Karen Marcellino is an innocent owner, who was never given any notice or opportunity to be heard on the seizure, retention, and forfeiture of her property.

---

[3] See R.C. 959.99(D) ("Whoever violates division (A) of section 959.13 or section 959.21 of the Revised Code is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock and may provide for its disposition * * * .).
[4] Exhibit A, page 10 of pdf.
[5] Ex. A, page 8 of pdf.

3

## IV.    STANDARD OF REVIEW – APPLICABLE LAWS

When a district court is asked to issue an injunction, it … balances four factors, "(1) the likelihood that the party seeking the [ ] injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction."[6]

## V.    PLAINTIFFS LIKELIHOOD OF SUCCESS ON THE MERITS

### A.  Defendants Violated Plaintiff's Rights to be Free from Unreasonable Seizure of her Property under the Fourth Amendment to the United States Constitution

The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[7]  When property is seized, the seizure must be reasonable.[8]  "In assessing the reasonableness of a seizure, the court must 'balance the nature and a quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion.'"[9]  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.[10]  A seizure becomes unlawful when it is more intrusive than necessary.[11]  The question here, is whether Defendants seizure, retention and

---

[6] *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1108-09 (6th Cir. 1995); s*ee also Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007) (same). *See* FED. R. CIV. PRO. 65(a).

[7] U.S. CONST. amend. IV.

[8] See *Livingston v. Luken*, 151 Fed.Appx. 470, 475 (6th Cir. 2005) ("A citizen has a Fourth Amendment right to freedom from "unreasonable ... seizures."), citing U.S. Const. amend. IV.

[9] *Id.* quoting *Autoworld Specialty Cars, Inc. v. United States,* 815 F.2d 385, 388 (6th Cir.1987) (quoting *United States v. Jacobsen,* 466 U.S. 109, 125, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).

[10] *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

[11] *Florida v. Royer*, 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

looming forfeiture of Karen Marcellino's horses is reasonable under the Fourth Amendment.[12]  If the seizure of the horses was conducted pursuant to R.C. 959.13, Defendants had no authority to seize her horses.[13]  However, even if R.C. 959.13 authorizes seizures of animals, "[a] statute that authorizes the police to seize property to which the government has not established a legal right or claim, and that on its face contains no limitation of forfeiture liability for innocent owners, raises substantial constitutional concerns."[14]  The criminal statute, R.C. 959.13, which Bianca Marcellino was charged under, does not give Defendants the authority to seize horses, nor does the statute gives them the authority to retain the horses subsequent to the initial seizure.  R.C. 959.99(D) also violates Karen Marcellino's Fourth Amendment rights because it authorizes the forfeiture of an innocent owner's property.  Therefore, the seizure, retention, and looming forfeiture, of her horses by Defendants, is unreasonable under the Fourth Amendment.  The impending forfeiture also violates her rights because a law (R.C. 959.99(D)), which impermissibly permits the forfeiture of an innocent owner's property for the acts of a defendant, constitutes an unreasonable seizure under the Fourth Amendment.  Defendants also have no legitimate governmental interest in retaining her horses.

Unlike R.C. 959.132, which authorizes the seizure of a companion animal for an offense under R.C. 959.131 ("Prohibition concerning companion animals"), there is no law in Ohio, which permits the seizure of non-companion animals when a person is suspected of committing an offense under R.C. 959.13.  If there is no right to seize, by definition the seizure is unreasonable.  However, even if R.C. 959.13 authorizes seizures of horses, and authorizes

---

[12] *Brown v. Battle Creek Police Department*, 844 F.3d 556, 67 (6th Cir. 2016).

[13] However, if the seizure was done pursuant to a search warrant, Karen Marcellino has no standing to challenge the warrant.  She takes no position on whether the seizure pursuant to the warrant was lawful or not.  However, regardless of the continued retention of her horses and the looming forfeiture, is what is being challenged here.

[14] *Krimstock v. Kelly*, 306 F.3d 40, 57-58 (2d Cir. 2002).

seizure of an innocent owner's horses, the retention and forfeiture of Karen Marcellino's horses is unreasonable under the Fourth Amendment.  Defendants have no legitimate governmental interest in retaining Karen Marcellino's horses, and Defendants certainly do not have a right to have Karen Marcellino's horses forfeited to them.  Karen Marcellino is an innocent owner who had no involvement in the alleged animal cruelty, had no knowledge of these allegations, is not culpable in the abuse, and who was never given any notice or opportunity to be heard on the seizure, retention, and impending forfeiture of her property.

### B.  Defendants Violated Plaintiff's Right to Due Process under the Fourteenth Amendment to the United States Constitution

"'For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"[15]  Even a temporary deprivation, without notice and an opportunity to be heard, violates due process.[16]  "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'"[17]  The United States Supreme Court has refuted the proposition that "a wrong may be done if it can be undone."[18]

The three-pronged test set forth by the US Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976), is the applicable starting point for any analysis to determine the level of process due to Karen Marcellino.  Under *Mathews*, the process due in a given case requires consideration of three factors: (1) "the private interest that will be affected by the

---

[15] *Fuentes v. Shevin,* 407 U.S. 67, 80 (1972), quoting *Baldwin v. Hale,* 1 Wall. 223, 233 (1864).
[16] *Id.* (holding statute permitting repossession of personal property, even temporarily, without pre-deprivation notice and opportunity to heard violated due process);
[17] *Id.* (internal citations and quotations omitted).
[18] *Stanley v. Illinois*, 405 U.S. 645, 647 (1972).

official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[19]

### i. Private Interest Affected

The first prong of the Mathew test has been satisfied. Karen Marcellino owns two horses, which have been seized and retained since June 1, 2018. There is a sentencing hearing on Tuesday, March 5, 2019 in Bianca Marcellino's case, where Geauga County Humane Society will be requesting forfeiture of Karen Marcellino's horses. And, it is expected that the state court will order forfeiture on Tuesday. It is well-established law that a person possesses a protected property interest in their animals.[20] Moreover, "[t]here can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces."[21] The Ohio Supreme Court, has acknowledged that "[t]he rights related to property, i.e., to acquire, use, enjoy, and dispose of property, are among the most revered in our law and traditions."[22]

### ii. Risk of Erroneous Deprivation

"In the due process context, the Supreme Court has shown special concern for the risk of erroneous deprivation posed to innocent owners."[23] Furthermore, the length of the deprivation

---

[19] *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

[20] See *Siebert v. Severino,* 256 F.3d 648, 656 (7th Cir. (, 2001) ("Pamela's ownership interest in the three horses is a protected property interest under the Fourteenth Amendment.").

[21] *Norwood v. Horney,* 110 Ohio St.3d 353, 363, 853 N.E.2d 1115 (2006).

[22] *Id.* at 361, 853 N.E.2d 1115 (2006).

[23] *Krimstock v. Kelly*, 306 F.3d 40, 56 (2d Cir. 2002)*,* citing *James Daniel Good Real Prop.,* 510 U.S. at 55, 114 S.Ct. 492.

may render the deprivation erroneous.  United States Supreme Court Justice, Sotomayor, in the Second Circuit seminal case *Krimstock v. Kelly*, stated, the length of deprivation, [ ] increases the weight of an owner's interest in possessing the [property]."[24]  Defendants have possessed Karen Marcellino's horses since June of last year.  Karen Marcellino is an innocent owner.  She has not been charged with any criminal violations pertaining to her horses.  No allegations exist accusing Karen of harming her horses, or that she had knowledge that they were being harmed.  There are no allegations in any proceedings that she had any knowledge of the crime, which Bianca Marcellino was convicted of.[25]  There are no allegations that she participated in the crime, which Bianca Marcellino was convicted of.  There is no basis for Defendants to retain Karen Marcellino's horses or obtain forfeiture of her horses.  Not only was Karen Marcellino not involved in the crime, which Bianca Marcellino was charged and convicted of, she is an innocent owner of her horses (Dreamer and Ferrari) who has never been given any notice or opportunity to be heard on the seizure, retention, and expected forfeiture of her property.

Defendants are seeking a forfeiture of an innocent owners property, who never had any notice or opportunity to be heard on the seizure, retention and looming forfeiture of her property. Defendants stand to benefit from this forfeiture of Karen Marcellino's horses.  According to the United States Supreme Court, when the government stands to benefit from a forfeiture, the government's action is more closely scrutinized.[26]  Clearly, for seizures purported to be authorized under R.C. 959.13, due process is non-existent.  The risk of erroneous deprivation is high in this case.  Karen Marcellino received no notice and no opportunity to contest Defendants'

---

[24] *Id.* at 61.
[25] Whether Bianca Marcellino is innocent or guilty has no import to the relief requested herein.
[26] *Timbs v. Indiana*, No. 17-1091, 10 (U.S. Feb. 20, 2019), quoting *Harmelin* v. *Michigan*, 501 U. S. 957, 979, n. 9 (1991) (("it  makes sense to scrutinize governmental action more closely when the State stands to benefit")

seizure, retention, and forfeiture of her property. R.C. 959.13 does not authorize seizure, retention, and/or forfeiture of animals, and no other provision of Ohio Revised Code Chapter 959 authorizes the seizure and retention of animals, which are not "companion animals." Therefore, the risk of erroneous deprivation is increased because R.C. 959.13 does not authorize seizures and retention of animals, let alone the seizure and retention of an innocent owner's animals.[27] Furthermore, this issue is of even greater concern when dealing with a living animal such as a horse, which requires a higher level of protection than inanimate property.[28]

### iii. Governmental Interest

The third *Mathews* factor examines "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[29] "[T]he question is what reason the government has for refusing to exercise some means short of continued retention after seizure to guarantee that property will be available to satisfy a civil forfeiture judgment.[30] Defendants have no governmental interest in retaining Karen Marcellino's property, and they certainly do not have any interest in obtaining said property by forfeiture. She is an innocent owner who has been given no opportunity or notice pertaining to the seizure, retention and looming forfeiture of her property. There is no justification for Defendants continued retention and forfeiture of her horses. "[H]owever weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero-that is, the government is never relieved of its duty to provide *some*

---

[27] *Recchia v. City of Los Angeles Dept. of Animal Services*, 889 F.3d 553, 562 (9th Cir. 2018) (holding that the fact that the statute authorized seizures was a factor in assessing the risk of erroneous deprivation under the Fourth Amendment).
[28] *Miller v. Clark County,* 340 F.3d 959, 968 n. 13 (9th Cir. 2003) ("The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")
[29] *Mathews,* 424 U.S. at 335.
[30] *Krimstock*, 306 F.3d at 68.

notice and *some* opportunity to be heard prior to final deprivation of a property interest.[31]  This is

the exact situation in Karen Marcellino's case.

### C.  Ohio Revised Code § 959.13 is Facially Unconstitutional

There is a "fundamental distinction between the constitutional application of legislation

to particular facts and the facial unconstitutionality of the legislation itself.  The latter question is

to be decided by considering the Act itself without regard to extrinsic facts."[32]  "In contrast to a

claim that a statute is unconstitutional "as applied," in which a party asserts that application of

the statute to his particular circumstances would be unconstitutional, a facial challenge seeks to

secure a declaration that a statute is utterly inoperative."[33]  R.C. 959.13 on its face, does not

permit Defendants to seize animals.  Moreover, R.C. 959.13, on it face, does not provide any

process by which a person can redeem their animals once they have been seized.  R.C. 959.13 is

facially invalid because it violates the Fourth and Fourteenth Amendments to the Constitution of

the United States.

### D.  R.C. 959.13 is Unconstitutional as Applied

R.C. 959.13 is unconstitutional as applied, because not only is there no authority to seize

under this statute,[34] once the seizure occurred, Defendants failed to provide notice and a hearing

---

[31] *Henry v. City of Middletown*, Case No. 15-3119, *18 (6th Cir. Jul. 15, 2016) (italics in *Henry*), citing *Logan* [*v. Zimmerman Brush Co.*], 455 U.S. [422,] 434 [(1982)] ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."); *Parratt v. Taylor*, 451 U.S. 527, 540 [] (1981) ("Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests.")

[32] *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229, 231, 520 N.E.2d 188 (1988).

[33] *U.S. v. Frost*, 125 F.3d 346, 370 (6th Cir. 1997), citing *Ada v. Guam Soc'y of Obstetricians and Gynecologists*, 506 U.S. 1011, 1012 (1992) (Scalia, J., dissenting).

[34] Plaintiff is not claiming the Ordinance is facially invalid because there are circumstances that it would be valid if the subject animal was not seized.

giving Karen Marcellino an opportunity to contest the seizure.  "[P]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'"[35]

R.C. 959.13 is void for vagueness.  "The void-for-vagueness doctrine is concerned with 'two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.'"[36]  R.C. 959.13 lacks explicit standards for those charged with its enforcement, and provides "for government by the moment-to moment opinions" of a humane officer, or other employees or agents of Defendants.[37]  Defendants, and their agents and employees, and the individual defendants, have written the law on the street.  They can seize a person's animals, retain the animals, and effect a forfeiture, without any ability for that person to contest the retention of their property.  The manner in which Defendants, and their agents and employees, have applied the Ordinance "does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of [Defendants]."[38]

Geauga County Humane Society, Courtwright, and Does 1-200, have decided, without affording the mandated constitutional protections, to simply retain Karen Marcellino's property, and seek forfeiture of Karen Marcellino's property at Bianca Marcellino's sentencing hearing on March 5, 2019.  Geauga County Humane Society did not even bother to notify the innocent

---

[35] *Fuentes*, 407 U.S. at 80 (internal citations and quotations omitted).
[36] *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 422 (6th Cir. 2014), quoting *FCC v. Fox Television Stations, Inc*., 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012), citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
[37] See *Cox v. Louisiana*, 379 U.S. 536, 579 (1965) (separate opinion of Mr. Justice Black).
[38] *Id*.

owner, Karen Marcellino, that they are seeking forfeiture of her horses in Bianca Marcellino's criminal case.  R.C. 959.13 is unconstitutional as applied to Karen Marcellino.  Instead, Defendant's attorney chose to inform others, via Facebook, that Defendants will be seeking forfeiture of her property on March 5, 2019.

### E.  R.C. 959.99(D) is Unconstitutional as Applied

When property is seized, the seizure must be reasonable.[39]  "In assessing the reasonableness of a seizure, the court must 'balance the nature and a quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion.'"[40]  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.[41]  A seizure becomes unlawful when it is more intrusive than necessary.[42]  Ohio Revised Code Section 959.99(D) sets for the penalties when a person is convicted of violating R.C. 959.13, "Whoever violates division (A) of section 959.13 or section 959.21 of the Revised Code is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock * * * ·".

Although this statute may be constitutional as to a criminal defendant who has been convicted of violating R.C. 959.13 and who actually owns the animals, as to a non-defendant owner, such as Karen Marcellino, the statute impermissibly permits forfeiture of an innocent owner's animals without her having knowledge of the crime, without culpable conduct, without notice and an opportunity to be heard in a meaningful time and manner, and with no legitimate

---

[39] See *Livingston v. Luken*, 151 Fed.Appx. 470, 475 (6th Cir. 2005) ("A citizen has a Fourth Amendment right to freedom from "unreasonable ... seizures."), citing U.S. Const. amend. IV.
[40] *Id.*, (internal quotation marks and citations omitted).
[41] *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
[42] *Florida v. Royer*, 460 U.S. 491, 504, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)

governmental interest in forfeiting a non-defendant's animals.  This statute therefore violates the Fourth Amendment because there is no justification for Karen Marcellino's property to be forfeited.  A forfeiture of her property will meaningfully interfere with her possessory interest in her horses.  Furthermore, the failure to provide notice and an opportunity to be heard in a meaningful time and manner violates the Fourteenth Amendment.  As the Sixth Circuit has stated, "however weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero-that is, the government is never relieved of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest.[43]  Defendants has provided Karen Marcellino with zero process by which she can contest the seizure and retention of her property, zero process by which she can obtain possession of her animals, and zero process by which she can contest the looming March 5, 2019 forfeiture.

## VI.    DEFENDANTS WILL SUFFER NO INJURY

Defendants have no legal authority to keep these horses, or demand they be forfeited. The state court, in Bianca Marcellino's criminal case, has no legal authority to order Karen Marcellino's horses to be forfeited to Geauga County Humane Society.  Defendants' retention of Karen Marcellino's horses violates both the Fourth and Fourteenth Amendments of the United States Constitution.  Defendants cannot suffer an injury when they have no legal authority to

---

[43] *Henry v. City of Middletown*, Case No. 15-3119, *18 (6th Cir. Jul. 15, 2016) (italics in *Henry*), citing *Logan* [*v. Zimmerman Brush Co.*], 455 U.S. [422,] 434 [(1982)] ("[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."); *Parratt v. Taylor*, 451 U.S. 527, 540 [] (1981) ("Our past cases mandate that some kind of hearing is required at some time before a State finally deprives a person of his property interests.")

retain her horses and have no legal authority to seek forfeiture of animals which are owned by an innocent person, such as Karen Marcellino.

## VII.   IRREPARABLE INJURY

Karen Marcellino has already experienced significant injury.  Defendants seized her property under a law, which does not authorize seizures, and retained her horses for almost a year.  Since June 1, 2018 she has been deprived of the use and enjoyment of her property, and has not been provided with any mechanism by which she can gain possession of her horses. Horses have a limited life span.  By the nature of how humane societies in Ohio keep dogs, cats, and other animals, it is clear that the horses have not been exercised, have not been vetted, seen a furrier, nor are they otherwise being cared for.  Moreover, Defendants have made a clear statement that they will be requesting, on March 5, 2019, forfeiture of Karen Marcellino's property.  Karen Marcellino's rights have already been violated, and the deprivation of her constitutional rights constitutes irreparable injury.[44]  The deprivation of property and process in violation of the Fourteenth Amendment, and the deprivation of his rights to be secure in her person and property under the Fourth Amendment, constitutes an immediate irreparable injury appropriate for redress by a temporary restraining order and preliminary injunction.  Without injunctive relief, Karen Marcellino will continue to suffer irreparable harm as a result of the Defendants' actions.

## VIII.   THE BALANCE OF HARMS WEIGHS STRONGLY IN FAVOR OF GRANTING PLAINTIFF THE RELIEF REQUESTED and THE PUBLIC WILL BENEFIT

---

[44] See *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

There is no evidence that the public interest will be harmed if the Court grants temporary injunctive relief and preliminary and permanent injunction relief.  The public has a powerful interest in protecting constitutional rights that is well served by granting injunctive relief here.[45] There is no reason to believe that there is any risk to public safety by barring Defendants from seizing and retaining animals without following the constitutional mandates under the Fourth and Fourteenth Amendments.

Preliminary relief will benefit the public because it will ensure that the Defendants' are enjoined from continuing to violate constitutional rights of innocent owners whose animals are seized when a non-owner is charged with violations of R.C. 959.13.

## IX.    NO SECURITY REQUIRED

As noted by one well-recognized authority, "the court may dispense with security altogether if grant of the injunction carries no risk of monetary loss to the defendant."[46]  The Sixth Circuit has observed that security is not mandatory under Rule 65(c), and can be dispensed with in the discretion of the court.[47]  Because Defendants will suffer no harm, economic or otherwise, no security should be required.

## X.    CONCLUSION

For the reasons set forth above, and in the Verified Complaint, Plaintiff asks this Court to grant her the relief she requested in her Motion for injunctive relief.

Respectfully submitted,

/s/ Michela Huth

---

[45] *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 579 (6th Cir. 2002) ("the public clearly has interest in vindicating constitutional right.").
[46] C. Wright & A. Miller, Federal Practice And Procedure § 2954.
[47] *See Moltan Co. v. Eagle-Picher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995).

15

MICHELA HUTH
(OH Reg. No. 0091353)

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
(NY Reg. No. 1637677)